IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

ALLAN L. BERGANO, D.D.S., P.C. *et al.*,

Plaintiffs,

v.                                                 Civil Action No. 2:15cv520

CITY of VIRGINIA BEACH, *et al.*,

Defendants.

## OPINION & ORDER

This matter is before the Court on two motions: the City of Virginia Beach, Philip A.

Davenport, and Gail E. Salmons's ("Defendants") Motion to Dismiss ("Motion to Dismiss"),

Doc. 12, and Dr. Allan L. Bergano's[1] ("Plaintiff") Motion for Leave to Amend ("Motion to

Amend"), Doc. 22. For the following reasons, the Court **GRANTS** Defendants' Motion to

Dismiss as to Counts 1, 3, 4, and 5 and **DENIES** it as to Counts 2 and 6. Doc. 12. The Court

**DENIES** Plaintiff's Motion to Amend, Doc. 22, but **GRANTS** Plaintiff leave to amend Count 4.

## I.     BACKGROUND

### A.     Factual Allegations[2]

Plaintiff is a dentist whose practice has been located at 256 N. Witchduck Road, Suite D,

Virginia Beach for over thirty (30) years. Am. Compl. ¶ 15. In the spring or summer of 2014, a

real estate representative for the City of Virginia Beach ("the City") informed Plaintiff that the

City intended to acquire the Witchduck Office Court ("the Witchduck building"), Plaintiff's

---

[1] Dr. Bergano and his dental practice, Dr. Allan L. Bergano, D.D.S., P.C., are both Plaintiffs, but for clarity only, the Court refers to them collectively as "Dr. Bergano" or "Plaintiff."

[2] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

1

office location, from the owner, Jerry Collier ("Mr. Collier"). Id. ¶ 27, Ex. F. The representative told Plaintiff that the acquisition was for a public project and Plaintiff would need to relocate. Id. On September 9, 2014, the City acquired the Witchduck building as part of the City's "Witchduck Road Phase II Project."[3] Id. ¶¶ 10, 18, 21, Ex. B ¶ A. On September 9, 2014, Plaintiff signed a Possession Agreement with the City to remain in the Witchduck building until September 15, 2015. Id., Ex. B. On September 15, 2014, the City notified Plaintiff that it would be using the entire building and Plaintiff would have to relocate. Id., Ex. A at 1. The City also stated that Plaintiff was eligible to receive relocation assistance from the City. Id., Ex. A. Later, the City moved its Human Services Department into the Witchduck building, and all private professional offices except Plaintiff's were relocated. Id. ¶ 21.

In 2015, Plaintiff hired a real estate broker to find a new location for Plaintiff's dental practice. Id. ¶ 35. Plaintiff and the broker determined 4460 Corporation Lane, Suite 190, Virginia Beach was suitable for the dental practice, and Plaintiff hired experts and contractors to provide estimates of the "significant" work to be done in the space to accommodate his practice. Id. ¶¶ 35–36. On July 28, 2015, Plaintiff signed a lease for the Corporation Lane building and submitted the lease and construction estimates to the City for reimbursement. Id. ¶¶ 38–39. On August 5, 2015, the City notified Plaintiff that it would not provide the requested funds to modify the Corporation Lane property because "it was apparent that the location would accommodate the dental practice with minor modifications and exceeds what the dental [practice] currently occupies." Id., Ex. C at 1. On August 12, 2015, Plaintiff informed the City that he would appeal its decision to deny him relocation assistance for the Corporation Lane property. Id. ¶ 36. On August 19, 2015, Plaintiff requested a hearing date for his appeal. Id.,

---

[3] City Attorney Mark Stiles's September 23, 2015 letter to Plaintiff's counsel states that the City acquired the Witchduck Office Court on September 14, 2015. Am. Compl., Ex. H at 1.

Ex. E, at 1.

On August 20, 2015, the City notified Plaintiff that it no longer needed the entire Witchduck property and Plaintiff did not have to relocate his practice after all. Id., Ex. F. The City told Plaintiff that it would reimburse him for "any expenses incurred to satisfy any contractual relocation obligations entered into after the effective date of the notice of relocation eligibility, pursuant to 49 CFR § 24.2(a)(9)(ii)(G)." Id. The City also offered to discuss a new lease with Plaintiff. Id. On September 18, 2015, Plaintiff sent a letter to the City complaining of the loss of direct access to Witchduck Road, the loss of parking for Plaintiff's staff and patients, the relocation of other professional offices from the Witchduck building, and the presence of police and shackled inmates at the building. Id. ¶¶ 20–26.

On September 23, 2015, the City responded with its factual findings and a determination that Plaintiff and his business are not "displaced persons." Id. ¶ 47, Ex. H at 2. The City recounted that it had paid the broker's fees and "may compensate Dr. Bergano and his wife, for their time and expenses pursuing an alternate location in accordance with Virginia Administrative Code Section 24 VAC 30-41-300." Id., Ex. H at 2. On October 12, 2015, the City met with Plaintiff, his counsel, and the real estate broker. Doc. 13 at 5 n.3.[4] Plaintiff still occupies and practices in the same office space he has used since he became a tenant of the Witchduck building many years ago.[5] Hearing Tr. at 19:15–19:16, Apr. 7, 2016.

## B.    Procedural History

On December 1, 2015, Plaintiff filed a three-count Complaint in this Court alleging that (1) Plaintiff and his practice are displaced persons entitled to relocation benefits; (2) Defendants violated Plaintiff's civil rights under 42 U.S.C. §§ 1983, 1988; and (3) Defendants violated

---

[4] Plaintiff's Amended Complaint does not mention the October 12, 2015 meeting.
[5] It appears that Plaintiff has begun renting another office, but it is not clear whether Plaintiff has moved his practice to that office. See id. ¶ 66.

Plaintiff's civil rights under the Equal Protection Clauses of the Fifth and Fourteenth Amendments. Compl. ¶¶ 39–75. On December 31, 2015, Defendants filed a Motion to Dismiss for Failure to State a Claim. Doc. 5. On January 11, 2016, Plaintiff filed an Amended Complaint. Am. Compl. On January 25, 2016, Defendants filed the instant Motion to Dismiss. Doc. 12. Plaintiff responded in opposition on February 8, 2016, Doc. 15, and Defendants replied on February 16, 2016, Doc. 16. On April 7, 2016, the Court held a hearing on the Motion to Dismiss. Doc. 20. On April 13, 2016, Plaintiff filed the instant Motion to Amend. Doc. 22. On April 27, 2016, Defendants responded in opposition, Doc. 25, and on May 4, 2016, Plaintiff replied, Doc. 26. On May 9, 2016, the Parties conducted a settlement conference before a magistrate judge of this Court. Doc. 27. The Parties did not settle. Id.

Plaintiff's six-count Amended Complaint alleges that Defendants violated Plaintiff's (1) rights guaranteed under 42 U.S.C. §§ 1983, 4601, 4622, Am. Compl. ¶¶ 54–114; (2) procedural due process rights under the Fifth and Fourteenth Amendments, id. ¶¶ 115–22; (3) substantive due process rights under the Fifth and Fourteenth Amendments, id. ¶¶ 123–25; and (4) right to equal protection guaranteed by the Fifth and Fourteenth Amendments, id. ¶¶ 126–38. Plaintiff also (5) requests declaratory relief under 28 U.S.C. § 2201 and Virginia Code § 8.01-184, id. ¶¶ 139–43, and (6) protection of his rights guaranteed under Virginia Code §§ 25.1-400, 25.1-406, id. ¶¶144–58.

## II.      DEFENDANTS' MOTION TO DISMISS

### A.    Legal Standards

#### i.    Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a court must accept as true all well-pleaded factual allegations and construe them in the plaintiff's favor, Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999), the same is not true for legal conclusions, Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. In deciding the sufficiency of a civil rights complaint, a court "'must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)) (emphasis in original).

In deciding a motion to dismiss, a court may consider the facts alleged on the face of the complaint as well as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (1990)); see Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted). However, "[c]onsideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint." Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)) (alteration in original).

*ii.    Exhibit-Prevails Rule and Corollary*

Generally, when an attachment to a complaint and the complaint itself conflict, a court should rely on the exhibit-prevails rule. Goines v. Valley Cmty. Servs. Bd., No. 15-1589, 2016 WL 2621262, at *4 (4th Cir. May 9, 2016). Under this rule, the exhibit is taken as true over "'the bare allegations of the complaint.'" Id. (quoting Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)). Thus, if a plaintiff "'attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.'" Id. (quoting Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 754 (7th Cir. 2002)).

In applying the exhibit-prevails rule, however, "it is not always appropriate to conclude that the plaintiff has adopted the contents of an attached document." Id. at *5 (citing N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 455 (7th Cir. 1998) (explaining the extent of Rule 10(c))) (illustrating that libel plaintiffs do not attach allegedly libelous documents for their truth). The court must consider the purpose for which the plaintiff attached the document. Id. If the plaintiff "incorporates a document upon which his claim is based, or . . . the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." Id. If instead it is clear that the plaintiff attached the document "for purposes other than the truthfulness of the document," the contents should not be taken as true. Id. When a defendant creates a document, the plaintiff's purpose in attaching it is particularly important because the document "may reflect the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff." Id. at *6. For example, a plaintiff may attach a defendant's recitation of some facts to develop part of the case background, but is not "required

6

to adopt the factual contents of the report wholesale." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1134 (D.C. Cir. 2015). A court must therefore consider the plaintiff's case theory and purpose for attaching the document in order to read the complaint and attachment in the light most favorable to him. Id.

**B.   Count 1: "Deprivation of Rights Guaranteed Under Federal Law" (Displacement and Relocation Assistance)**

*i.   Federal Rights of Action Under the Uniform Relocation Assistance Act ("URA")*

"The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979) (citation and internal quotation marks omitted). Rather, a federal statute must specifically allow plaintiffs to bring private causes of action. See Gonzaga Univ. v. Doe, 536 U.S. 273, 280 (2002). "[U]nless Congress 'speaks with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." Id. (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17, 28, & n.21).

Congress passed the URA to provide a standard procedure for allocating benefits to private parties displaced by any federally funded project. 42 U.S.C. § 4601 et seq. (2012); see Clear Sky Car Wash, LLC v. City of Chesapeake, Va., 910 F. Supp. 2d 861, 873–74 (E.D. Va. 2012), aff'd 743 F.3d 438 (4th Cir. 2014). After thoroughly reviewing Circuit holdings and the URA's legislative history, this Court held in Clear Sky that neither the Act's land acquisition provisions (Subchapter III) nor its relocation assistance provisions (Subchapter II) create a federal right of action. Clear Sky, 910 F. Supp. 2d at 876–79.[6] A federal court therefore has no jurisdiction over claims brought under Subchapter II or III of the URA. Id. at 879. Rather, a

---

[6] The Fourth Circuit affirmed this Court's decision but addressed only Subchapter III because appellants had not properly alleged a Subchapter II claim. Clear Sky, 743 F.3d at 442 & n.2.

7

plaintiff must bring a URA claim under the Administrative Procedure Act (APA). Id. at 879.

*ii.   Federal Law*

Title 42, Section 4601(6) of the United States Code, entitled "Definitions," provides the

following definitions and exclusions of "displaced person:"

(A) The term "displaced person" means, except as provided in subparagraph (B)—

> (i) any person who moves from real property, or moves his personal property from real property—
>
>> (I) as a direct result of a written notice of intent to acquire or the acquisition of such real property in whole or in part for a program or project undertaken by a Federal agency or with Federal financial assistance; or
>>
>> (II) on which such person is a residential tenant or conducts a small business, a farm operation, or a business defined in paragraph (7)(D), as a direct result of rehabilitation, demolition, or such other displacing activity as the lead agency may prescribe, under a program or project undertaken by a Federal agency or with Federal financial assistance in any case in which the head of the displacing agency determines that such displacement is permanent; and
>
> (ii) solely for the purposes of sections 4622(a) and (b) and 4625 of this title, any person who moves from real property, or moves his personal property from real property—
>
>> (I) as a direct result of a written notice of intent to acquire or the acquisition of other real property, in whole or in part, on which such person conducts a business or farm operation, for a program or project undertaken by a Federal agency or with Federal financial assistance; or
>>
>> (II) as a direct result of rehabilitation, demolition, or such other displacing activity as the lead agency may prescribe, of other real property on which such person conducts a business or a farm operation, under a program or project undertaken by a Federal agency or with Federal financial assistance where the head of the displacing agency determines that such displacement is permanent.

(B) The term "displaced person" does not include—

> (i) a person who has been determined, according to criteria established by the head of the lead agency, to be either in unlawful occupancy of the displacement dwelling or to have occupied such dwelling for the purpose of obtaining assistance under this chapter;
>
> (ii) in any case in which the displacing agency acquires property for a program or project, any person (other than a person who was an occupant of such property at the time it was acquired) who occupies such property on a rental basis for a short term or a period subject to termination when

the property is needed for the program or project.

42 U.S.C. § 4601(6)(A)–(B) (2012).

Title 42, Section 4622 of the United States Code, entitled "Moving and Related Expenses," states in pertinent part,

(a) General provision
Whenever a program or project to be undertaken by a displacing agency will result in the displacement of any person, the head of the displacing agency shall provide for the payment to the displaced person of—
(1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;
(2) actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency;
(3) actual reasonable expenses in searching for a replacement business or farm; and
(4) actual reasonable expenses necessary to reestablish a displaced farm, nonprofit organization, or small business at its new site, but not to exceed $25,000, as adjusted by regulation, in accordance with section 4633(d) of this title.
. . . .
(c) Displacement from business or farm operation; election of payments; minimum and maximum amounts; eligibility
Any displaced person eligible for payments under subsection (a) of this section who is displaced from the person's place of business or farm operation and who is eligible under criteria established by the head of the lead agency may elect to accept the payment authorized by this subsection in lieu of the payment authorized by subsection (a) of this section. Such payment shall consist of a fixed payment in an amount to be determined according to criteria established by the head of the lead agency, except that such payment shall not be less than $1,000 nor more than $40,000, as adjusted by regulation, in accordance with section 4633(d) of this title. A person whose sole business at the displacement dwelling is the rental of such property to others shall not qualify for a payment under this subsection.

42 U.S.C. § 4622(a), (c) (2012).

The URA, found in Title 49, Part 24 of the Code of Federal Regulations, provides the following definitions and exclusions of "displaced person:"

(i) General. The term displaced person means, except as provided in paragraph (a)(9)(ii) of this section, any person who moves from the real property or moves

9

his or her personal property from the real property.  (This includes a person who occupies the real property prior to its acquisition, but who does not meet the length of occupancy requirements of the Uniform Act as described at § 24.401(a) and § 24.402(a)):

    (A) As a direct result of a written notice of intent to acquire (see § 24.203(d)), the initiation of negotiations for, or the acquisition of, such real property in whole or in part for a project;

    (B) As a direct result of rehabilitation or demolition for a project; or

    (C) As a direct result of a written notice of intent to acquire, or the acquisition, rehabilitation or demolition of, in whole or in part, other real property on which the person conducts a business or farm operation, for a project.  However, eligibility for such person under this paragraph applies only for purposes of obtaining relocation assistance advisory services under § 24.205(c), and moving expenses under § 24.301, § 24.302 or § 24.303.

(ii) Persons not displaced.  The following is a nonexclusive listing of persons who do not qualify as displaced persons under this part:

    . . . .

    (D) A person who is not required to relocate permanently as a direct result of a project.  Such determination shall be made by the Agency in accordance with any guidelines established by the Federal Agency funding the project (See appendix A, § 24.2(a)(9)(ii)(D));

    . . . .

    (F) A person whom the Agency determines is not displaced as a direct result of a partial acquisition;

    (G) A person who, after receiving a notice of relocation eligibility (described at § 24.203(b)[7]), is notified in writing that he or she will not be displaced for a project.  Such written notification shall not be issued unless the person has not moved and the Agency agrees to reimburse the person for any expenses incurred to satisfy any binding contractual relocation obligations entered into after the effective date of the notice of relocation eligibility . . . .

URA, 49 C.F.R. § 24.2(a)(9) (2016) (footnote added).  "This Act applies to all acquisitions of real property or displacements of persons resulting from Federal or federally-assisted programs or projects and affects 18 Federal Agencies."  Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs, 70 Fed. Reg. 590, 590 (Jan. 4, 2005)

---

[7]

    (b) Notice of relocation eligibility.  Eligibility for relocation assistance shall begin on the date of a notice of intent to acquire (described in 49 C.F.R. § 24.203(d)), the initiation of negotiations (defined in § 24.2(a)(15)), or actual acquisition, whichever occurs first.  When this occurs, the Agency shall promptly notify all occupants in writing of their eligibility for applicable relocation assistance.

URA, 49 C.F.R. § 24.203(b) (2016).

(49 C.F.R. pt. 24).

### iii.    Analysis

Plaintiff alleges a claim under the "Federal Uniform Relocation Assistance and Real Property Acquisition Policies of Chapter 61 of Title 42 of the United States Code." Am. Compl. ¶ 108. Plaintiff accordingly argues that Defendants are "liable to [him] pursuant to 42 U.S.C. § 1983." Id. ¶ 108. Plaintiff's relocation claims arise under Subchapters II and III of the URA. Id. ¶¶ 108, 58; see 42 U.S.C. § 4601 et seq. (2012). Under this Court's ruling in Clear Sky, Subchapter II does not create a federal right of action. 910 F. Supp. 2d at 876–79. Under the Fourth Circuit's ruling in Clear Sky, Subchapter III does not create a federal right of action. 743 F.3d at 444. Because § 1983 only "supplies a remedy for rights conferred by other statutes or by the Constitution," Plaintiff cannot pursue a § 1983 in the absence of rights of action under the URA. Id. Therefore, the Court does not have jurisdiction to consider Plaintiff's URA claim.

### i.    Conclusion

The Court **GRANTS** Defendants' Motion as to Count 1.

**C.    Count 2: "Deprivation of Rights Without Due Process of Law (Procedural Due Process)"**

### ii.    Procedural Due Process

Under the Due Process Clauses of the Fifth and Fourteenth Amendments, the government must provide a person with due process of law when acquiring his property. U.S. Const. amends. V, XIV. To plead a procedural due process claim, a plaintiff must demonstrate he (1) "had a constitutionally cognizable life, liberty, or property interest," (2) "the deprivation of that interest was caused by 'some form of state action,'" and (3) "the procedures employed were constitutionally inadequate." Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013) (quoting Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 145 (4th Cir. 2009)) (requiring three elements to prove a procedural due process claim); Clear Sky, 910 F. Supp. 2d at

11

885 (requiring three elements to plead a procedural due process claim); see Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 826 (4th Cir. 1995).

### iii.    Property Interests Protected

Procedural due process protects property interests "well beyond actual ownership of real estate, chattels, or money." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571–72 (1972). These interests are vindicated, not created, by the Fourteenth Amendment.  Bannum, Inc. v. Town of Ashland, 922 F.2d 197, 200 (4th Cir. 1990).  Rather, they are created by "existing rules or understandings that stem from an independent source such as state law . . . that secure[s] certain benefits and . . . support[s] claims of entitlement to those benefits." Roth, 408 U.S. at 577; see Johnson v. City of Kings Mountain, 883 F.2d 69, at *1 (4th Cir. 1989) (unpublished table decision) (noting that employment property interests are "determined by reference to state law") (citing Bishop v. Wood, 426 U.S. 341, 344 (1976)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it [ ] . . . [or] a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577 (holding that a public university professor did not have a guarantee or property interest in the renewal of his one-year contract).

"A contingent or expected property interest, in contrast to an entitlement to a property interest, does not 'rise to the level' of a constitutionally protected property interest for due process purposes." Miller v. Montgomery Cnty., Md., 458 F. App'x 304, 309 n.9 (quoting Phelps v. Housing Auth. of Woodruff, 742 F.2d 816, 823 (4th Cir. 1984)).  A property interest exists "if there are such rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to the benefit and that he may invoke at a hearing." Perry v. Sindermann, 408 U.S. 593, 601 (1972).  Independent sources of property interests can include "agreements implied from 'the promisor's words and conduct in light of the surrounding circumstances.'"

12

<u>Fuller v. Laurens Cnty. Sch. Dist. No. 56</u>, 563 F.2d 137, 142 (4th Cir. 1977); <u>see</u> <u>Bishop</u>, 426 U.S. at 344 (concerning implied contracts).   However, an "informal system" lacking specific parameters or a "mutually explicit understanding" is insufficient to create a property interest. <u>Med Corp., Inc. v. City of Lima</u>, 128 F. Supp. 2d 454, 457 (N.D. Ohio 2000).

In <u>Bannum</u>, the town of Ashland gave written approval to a contractor for the operation of a half-way house, but later rescinded its approval for the project. 922 F.2d at 199.   The Fourth Circuit held that the injured contracting party did not have a property interest in the continued approval of the project because the town gave its approval

> pursuant to an informal request without the payment of a fee.   No underlying ordinance, rule or procedure applied to the application for or the grant of the approval, and no other term or condition attached by operation of [contract or property] law or by understanding. . . . . [N]othing in the record suggest[ed] that Ashland could not have unilaterally withdrawn the approval at any time.

<u>Id.</u> at 200.   The court noted that a "well-founded expectancy . . . does not rise to the level of a property interest protected by the Fourteenth Amendment, nor did Bannum's "mere reliance on the approval elevate [the] interest into an entitlement." <u>Id.</u> at 200–01.

### iv.   *Constitutionally Adequate Procedure*

"Due process 'is flexible and calls for such procedural protections as the particular situation demands' in order 'to minimize the risk of error.'" <u>Slade v. Hampton Roads Reg'l Jail</u>, 407 F.3d 243, 253 (4th Cir. 2005) (quoting <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 12–13 (1979)).   When determining whether a deprivation is constitutionally proper, a court must consider "(1) the private interest to be affected by the action; (2) the risk of erroneous deprivation of that interest through the procedures that were used and the probable value of added procedures; and (3) the government's interest, including the fiscal and administrative burdens of added procedures." <u>Id.</u> (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976)).

*v.  Analysis*

Plaintiff must allege that Defendants deprived him of property or a property interest without due process of law. Sansotta, 724 F.3d at 540. These could include an interest in his tenancy of the Witchduck building, an interest in access to the building and parking lot, or an interest in the building's conditions prior to the City's acquisition. See Roth, 408 U.S. at 572, 578. While Count 2 does not on its face allege a lost property interest, it "incorporate[s] the foregoing allegations" of the Amended Complaint. Am. Compl. ¶ 115. In support of Claim 1, Plaintiff alleges that, as a displaced person, he has "a property interest in relocation benefits under the [URA]." Id. ¶ 71. The Clear Sky plaintiffs' identical claim to benefits under the URA was rejected because entitlement to a property interest must be created by statute or other recognized rules, Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005), and the URA does not create such entitlements, Clear Sky, 910 F. Supp. 2d at 885–86. Just as the Clear Sky plaintiffs failed to state a property interest required for a procedural due process claim, Plaintiff has failed to allege a property interest for URA benefits.

However, unlike the Clear Sky plaintiffs, Plaintiff has alleged entitlement to additional cognizable property interests protected by state contract law and guaranteed through procedural due process.[8] See Roth, 408 U.S. at 577. Plaintiff alleges that the City has (1) diminished Plaintiff's access to the building and parking and (2) made the Witchduck building an improper place for his dental practice. See Am. Compl. ¶¶ 20–22, 63, 114.

The Court first notes that Plaintiff has never owned any portion of the Witchduck building or its surrounding property; he has only been a tenant. Id. ¶¶ 16–17, Exs. A, B ¶ C. He

---

[8] The Clear Sky plaintiffs pled "no facts suggesting that they [had] been deprived of their property or liberty interests in the Land and business comprising Clear Sky Car Wash." Clear Sky, 910 F. Supp. 2d at 885. Instead, they alleged only their entitlement to "certain pre-deprivation rights of which Defendants [had] deprived them by failing to comply with the URA's policies." Id. at 886.

has not alleged a property interest in his tenancy of the Witchduck building because he apparently still occupies his office at the building. See id. ¶¶ 20–23. Plaintiff's counsel stated at the April 7, 2016 motion hearing, "[Plaintiff]'s operating the business still at the current site . . . ." Hearing Tr. at 19:15–19:16, Apr. 7, 2016. Taking this statement and Plaintiff's ongoing complaints about the City's use of the building as true, Plaintiff still practices dentistry in the building. See Am. Compl. ¶¶ 20–23. Similar to the Clear Sky plaintiffs, who "remained in possession of the land and continued to operate the business despite the instant litigation," Plaintiff has not left the Witchduck building despite his allegations that is unsuitable for his practice. 910 F. Supp. 2d at 885. Defendants therefore have not deprived Plaintiff of his property interest in his tenancy.

### a. Plaintiff Has Alleged Property Interests in Access to the Witchduck Building and Adequate Parking.

Plaintiff has, however, properly alleged that the City interfered with his property interests in access to the Witchduck building and in adequate parking. Am. Compl. ¶¶ 20, 63. Plaintiff alleges that the City has "eliminate[ed] direct access to Witchduck Road for the building and facility." Id. ¶ 20. This has caused the property to "los[e] direct access to Witchduck Road requiring more maneuvers to enter the property and making it less desirable." Id. ¶ 63. To have a property interest in the access to the building, Plaintiff must have a legitimate claim of entitlement to it rising above mere expectation or reliance. Roth, 408 U.S. at 577. As a tenant, Plaintiff does not own the access areas around the building, but his lease with the City must allow him, his employees, and his patients to reach his office space in a reasonable manner. Plaintiff's lease with the city[9] requires the City "to use reasonable efforts to minimize any

---

[9] Plaintiff's lease with the City is considered for its truth under the exhibit-prevails rule and corollary because it was not prepared in view of the instant litigation and Plaintiff agreed to its provisions when he signed it. See Goines, 2016 WL 2621262, at *5; Banneker, 798 F.3d at 1134.

disruption to the Tenant's business (including access to, and visibility of, the Premises) caused by ongoing construction around the Premises." Am. Compl., Ex. B ¶ 19. In contrast to the town's approval letter in Bannum, the City's contractual promise to provide regular and reasonable access to the Witchduck building elevates Plaintiff's interest to an expected benefit based in state contract law. See 922 F.2d at 199. Therefore, Plaintiff has properly alleged a property interest in access to the building.

Plaintiff alleges that the City's "eliminating parking spaces from the Witchduck Office Court's parking lot, eliminating direct access to Witchduck Road for the building and facility, and reserving other parking for 'Police Parking Only' and other City vehicles" has curbed Plaintiff's ability to park at the building. Id. ¶¶ 20, 63. "City employees and guests routinely take all available parking," and "[a]s a result of the City's acquisition, there is no longer sufficient parking for [Plaintiff] to operate his practice." Id. ¶¶ 21, 63.

The Court notes that Plaintiff attached a letter from City Attorney Mark Stiles ("Mr. Stiles") to his Amended Complaint. Id., Ex. H. Mr. Stiles wrote to Plaintiff's counsel on September 23, 2015, "I have considered two separate leases that Dr. Bergano had for the premises while it was owned by Mr. Collier . . . . Dr. Bergano's original lease did not give him control over the parking lot." Id. at 2. According to the City, Plaintiff does not have a property interest in the parking lot. See id. Because Plaintiff attached the City's letter to his Amended Complaint and explicitly relies on it, id. ¶ 47, it should be considered in deciding the Motion to Dismiss. Zak, 780 F.3d at 606–07. Applying the exhibit-prevails rule and its corollary, the Court considers that Plaintiff attached the letter written by a Defendant for the purpose of providing factual background. See Goines, 2016 WL 2621262, at *5; Banneker, 798 F.3d at 1134. Mr. Stiles's letter recites some of the City's actions in dealing with Plaintiff's objections,

which may be couched in self-serving language. See Goines, 2016 WL 2621262, at *6. Plaintiff's Amended Complaint would not sensibly incorporate as true the statements concerning Plaintiff's displacement status or interest in the Witchduck building parking lot. See, e.g., Am. Compl., Ex. H at 2. Therefore, the Amended Complaint's allegations stand despite the conflict, and Mr. Stiles's letter is not to be taken as true for the purposes of deciding the Motion to Dismiss. See Goines, 2016 WL 2621262 at *5–6.

Just as Plaintiff has a property interest in the access to the building, he has a property interest in adequate parking. When it executed its one year lease with Plaintiff, the City knew that Plaintiff's employees and patients must be able to park at the Witchduck building for their shifts and appointments. Indeed, the City extended a commercial lease with Plaintiff, and this type of lease necessitates space for visitors to park on the premises. See Am. Compl., Ex. B ¶ 1.

**b. Plaintiff Has Alleged a Property Interest in the Suitability of the Property for a Dental Practice.**

Plaintiff has also alleged a property interest in the character of the Witchduck property as it existed before the City acquired it. See Am. Compl. ¶¶ 19, 22, 63, 114. Hinting that a change in its nature was foreseeable, Plaintiff relays that Mr. Collier, "when advised by the City of the condemnation of a portion of the subject property for the Project, requested that the City of Virginia Beach acquire the entire property as a result of the negative impact to the remaining property." Id. ¶ 17. Plaintiff states that the City did acquire the whole Witchduck property, but then did not assist Plaintiff in relocating. See id. ¶¶ 116, 118. The City "took Dr. Bergano's property and rendered it unsuitable for use as a dental practice." Id. ¶¶ 113–14. To wit, the City has "dramatically changed the nature and use of the property" by replacing all other professional offices with a Human Services Department and bringing convicted felons and police presence to the building. Id. ¶¶ 19, 22. The Court notes that Mr. Stiles's letter to Plaintiff's counsel stated,

17

> I do note that neither [previous] lease allowed Dr. Bergano to control the uses on the property. Mr. Collier could have opted to lease the other units to any individual or business, including to the City for the uses now occupying the Property, so the status quo for Dr. Bergano has not changed.

Id., Ex. H, at 2. Again considering the purpose for which Plaintiff attached the document, the Court does not consider Mr. Stiles's statements for their truth.

Plaintiff need not show that he exercised influence over Mr. Collier's choices about use of the property. Instead, he has shown that he exercised more than a "mere reliance" on the City's preserving the property as it existed, because the City's lease with Plaintiff specifically stated that Plaintiff's office space must be "used as a dental office and for no other purpose." Id., Ex. B ¶ 1; see Bannum, 922 F.2d at 200. Plaintiff could do nothing else with his office space; thus, he had an entitlement, not just a "unilateral expectation," that the property would remain suitable for a dental practice. Roth, 408 U.S. at 577. The City is consequently bound by the implication of its explicit restriction on Plaintiff. Fuller, 563 F.2d at 142. Therefore, Plaintiff has alleged a property interest in the suitability of the Witchduck property for a dental practice.

**c.  Plaintiff Has Properly Alleged Procedural Due Process Claims.**

Plaintiff has alleged "constitutionally cognizable . . . property interest[s]" in access to the Witchduck building, adequate parking, and the suitability of the property for a dental practice. See Clear Sky, 910 F. Supp. 2d at 885. It is also clear that that the City's actions deprived Plaintiff of these legitimate property interests. Am. Compl. ¶¶ 20, 21, 63, 65; see Clear Sky, 910 F. Supp. 2d at 885. Plaintiff must finally plead that the City used "constitutionally inadequate" procedures to deprive him of his property interests. Clear Sky, 910 F. Supp. 2d at 885.

In Slade, the Fourth Circuit considered a jail's daily deduction of one dollar ($1) from the appellant's account, which could continue up to five months. Slade, 407 F.3d at 253. The Court held that the jail had a legitimate interest in defraying the costs of retaining the appellant and the

incremental deduction of approximately $150 presented "little risk of erroneous deprivation that a pre-deprivation hearing would ameliorate." Id. In contrast, Plaintiff's loss of access to the building, adequate parking, and the building's suitability for a dental practice are intrusions upon substantial private property interests without a defined end. The City gave Plaintiff no indication as to when its construction on the property or its use of it as a Human Services location will cease, nor has it provided Plaintiff a hearing or "opportunity to be heard."[10] Am. Compl. ¶¶ 41, 45, 116, 120. Further, though the administrative burden of providing a hearing is much greater than an automatic prisoner account deduction, the City should be accustomed to providing a "prompt and full opportunity to be heard" as outlined in its standard relocation assistance brochure. Id., Ex. G at 7. A great risk of error also exists here, where the deprivation of a business owner's property interests can damage his livelihood. See Slade, 407 F.3d at 253. The City's use of the property and treatment of Plaintiff are more than "routine matters of accounting" or "essentially ministerial matters." Id. at 253–54 (quoting Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000)). They are serious property decisions that require discretion and careful communication with affected parties. The City should have presented Plaintiff with a full opportunity to be heard beyond the reading and responding to his letters requesting an appeal. Am. Compl. Exs. D, E, F. Finally, the City prepared for almost a year to provide relocation assistance to Plaintiff before it alerted him that he did not need to relocate; discussing the reasons for its decision and reversal at a hearing would have imposed a minimal burden on the City. Id. ¶¶ 28, 44. Plaintiff has properly alleged that the procedures provided to him were constitutionally inadequate.

---

[10] The Court notes that "government entities need not provide a hearing before they physically take private property, so long as the taking is for a public use." Presley, 464 F.3d at 489 (citing Bragg v. Weaver, 251 U.S. 57, 58 (1919)). Here, the City's action is not a taking because Plaintiff is a tenant rather than an owner of the Witchduck property. Therefore, even if the City's project is for a public use, the City is not excused from providing a hearing.

*vi.   Conclusion*

Because Plaintiff has properly alleged procedural due process claims for the denial of access to the Witchduck building, adequate parking, and suitability of the property for a dental practice, the Court **DENIES** Defendants' Motion as to Count 2.

**D.    Count 3: "Deprivation of Rights Without Due Process of Law (Substantive Due Process)"**

*i.    Substantive Due Process*

To plead a substantive due process claim, a plaintiff must demonstrate "'(1) that [he] had property or a property interest; (2) that [the defendant] deprived [him] of this property or property interest; and (3) that [the defendant's] action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.'" Clear Sky, 910 F. Supp. 2d at 885 (quoting Sylvia, 48 F.3d at 827). "Substantive due process is 'a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding 'the fairness of the procedures used to implement them.'" Id. (quoting Love v. Pepersack, 47 F.3d 120, 122 (4th Cir. 1995)). "Irrationality and arbitrariness imply a most stringent standard against which state action is to be measured in assessing a substantive due process claim." Rucker v. Harford Cnty., 946 F.2d 278, 281 (4th Cir. 1991). Consequently, a substantive due process claim will succeed "only where the state courts can do nothing to rectify the injury that the state has already arbitrarily inflicted." Love, 47 F.3d at 123; see Awkard v. Md.-Nat'l Capital Park & Planning Comm'n, No. RWT 08cv1562, 2011 WL 2896005, at *3 (D. Md. July 15, 2011) (holding that a substantive due process claim was insufficient because the plaintiffs "ha[d] not shown that their post-deprivation remedies [were] inadequate to rectify any taking of their property" since they had not initiated an inverse condemnation, a quiet title, or other state court proceeding). "[B]y barring certain government actions regardless of the fairness of the

procedures used to implement them, it serves to prevent governmental power from being 'used for purposes of oppression.'" Daniels v. Williams, 474 U.S. 327, 321–22 (1986) (quoting Murray v. Hoboken Land & Imp. Co., 59 U.S. 272, 277 (1855)) (citations omitted).

In Marks v. City of Chesapeake, Virginia, the Fourth Circuit held that a plaintiff properly alleged a substantive due process claim following a city's denial of a permit for a palmistry and hand reading business. 883 F.2d 308 (4th Cir. 1989). The plaintiff claimed the denial was "arbitrary" and "capricious" because the city council simply complied with the plaintiff's local opponents' "'religious' reasons for withholding the permit." Id. at 312–13. In Rucker, the Fourth Circuit held that an undisputedly accidental police shooting was not an "'oppressive' abuse of governmental power" because the plaintiff had entered into a "scene of visible danger from which he was warned by the police to leave." 946 F.2d at 281. The Court held that though the plaintiff did not leave, the shooting was not "reckless and irresponsible" enough to be "'inhumane' conduct 'literally shocking to the conscience'" as is required for a physical substantive due process claim. Id. at 282.

In Keck v. Virginia, a magistrate judge of this Court found that a complaint insufficiently alleged a substantive due process claim even though the plaintiff's "demotion, transfer, and pay reduction were mistaken and unfair." No. 3:10cv555, 2011 WL 4589997, at *20 (E.D. Va. Sept. 9, 2011). The magistrate judge stated, "[T]hose allegations alone [could not] possibly undergird a substantive due process claim" and recommended that the claim be dismissed. Id.

*ii.    Analysis*

Plaintiff must demonstrate that Defendants deprived him of access to the Witchduck building, adequate parking, and suitability of the property for his dental practice in an "irrational" or "arbitrary" way such that no state court process can cure his injury. See Clear

Sky, 910 F. Supp. 2d at 885; Rucker, 946 F.2d at 281. In 2014 and 2015, Plaintiff took steps to relocate his dental office because of the City's representations that it needed the entire Witchduck building. Am. Compl. ¶¶ 35–36, 38–39, Ex. A at 1. Less than a month before his one year lease expired and after he had been denied relocation assistance and declared his intent to appeal the decision, the City arbitrarily informed Plaintiff that he no longer needed to relocate. See Am. Compl. ¶ 36, Exs. C at 1, F. Nevertheless, the City's actions could have been "unfair" and yet fail to constitute an "oppressive abuse of governmental power" that "shock[s] the conscience." Keck, 2011 WL 4589997, at *20; Rucker, 946 F.2d at 281–82.

Furthermore, Plaintiff has not alleged that he exhausted all state remedies, see infra Part III.C., nor is it apparent that the state courts "can do nothing to rectify the injury" he has suffered, see Love, 47 F.3d at 123. The access, parking, and suitability of the Witchduck building for a dentistry are not irreparably damaged property interests; they can be restored or Plaintiff can be appropriately compensated for his loss. Therefore, Plaintiff has failed to allege a substantive due process claim.

### vii. Conclusion

The Court **GRANTS** Defendants' Motion as to Count 3.

### E. Count 4: "Deprivation of Equal Protection Under the Law"

### i. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated citizens in the same manner. U.S. Const. amend. XIV § 1. "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." Equity in Athletics, Inc. v.

22

Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011).

### ii.   Analysis

Plaintiff alleges that "[t]he City has previously relocated other dental practices for a related project and paid relocation benefits in approximate amounts of $283,866.73, $298,517.65, and $520,687.54." Am. Compl. ¶ 129. He also alleges that "[t]he City has provided relocation benefits to other displaced persons along the Project."[11] Id. ¶ 131. Even taken as true, these statements and Plaintiff's assertion that the City acted "irrationally, arbitrarily, and capriciously," id. ¶ 135, do not demonstrate that the City denied him benefits due to discriminatory animus, see Equity in Athletics, 639 F.3d at 108. Plaintiff has not stated any discriminatory reason why he believes the City denied him benefits and therefore fails to state a proper equal protection claim.

### viii.   Conclusion

The Court **GRANTS** Defendants' Motion as to Count 4. But see infra Part II.H.

### F.   Count 5: "Declaratory Relief"

### i.   Federal Law

The federal Declaratory Judgment Act states in pertinent part,

> (a) In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (2012). The purpose of this Act "is to avoid accrual of avoidable damages to [the] party uncertain of its rights." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., 386

---

[11] While Plaintiff argues he was treated differently from others who received relocation assistance, he states that "[t]he City has a policy and custom of denying relocation benefits to displaced persons" and "the City did not provide relocation benefits or assistance to any other persons who relocated from the Witchduck Office Court as a result of the City's Project . . . ." Am. Compl.¶¶ 93–94. The Court resolves the apparent contradiction in favor of Plaintiff's proper allegation of an equal protection claim, i.e., that the City denied benefits to Plaintiff, but not others. The City therefore cannot have a policy of denying benefits to displaced persons.

F.3d 581, 593 (4th Cir. 2004) (citing NUCOR Corp. v. Aceros y Maquilas de Occidente, 28 F.3d 572, 577 (7th Cir. 1994)).

Under federal law, a declaratory judgment is appropriate when: "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties . . . ; and (3) the court does not abuse its discretion in its exercise of jurisdiction." Volvo, 386 F.3d at 592 (internal quotation marks omitted) (citing 28 U.S.C. § 2201; Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994); N. Jefferson Square Assocs. v. Va. Hous. Dev. Auth., 94 F. Supp. 2d 709, 714 (E.D. Va. 2000)); accord Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

<em>ii.    Virginia Law</em>

The Virginia Declaratory Judgment Act states,

> In cases of actual controversy, circuit courts within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed and no action or proceeding shall be open to objection on the ground that a judgment order or decree merely declaratory of right is prayed for. Controversies involving the interpretation of deeds, wills, and other instruments of writing, statutes, municipal ordinances and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

Va. Code § 8.01-184.

Under Virginia law, declaratory judgment is inappropriate when the plaintiff demands it after "the various claims and rights asserted ha[ve] all accrued and matured, and . . . the wrongs ha[ve] been suffered." Liberty Mut. Ins. Co. v. Bishop, 211 Va. 414, 421 (1970). In fact,

> [t]he intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature. In other words, the intent of the act is to have courts render declaratory judgments which may guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected

24

> action incident to their rights, which action, without direction, would jeopardize
> their interests.  This is with a view rather to avoid litigation than in aid of it.

Id.

### iii.   Analysis

Plaintiff makes both federal and state declaratory judgment claims.  Am. Compl. ¶¶ 1, 3,

143; 28 U.S.C. § 2201(a); Va. Code § 8.01-184.  To receive a declaration of the Parties' rights

and obligations under federal law, Plaintiff's claim must meet the three-pronged federal

declaratory judgment test.  Volvo, 386 F.3d at 592.  While Plaintiff's claim alleges an actual

controversy, it lacks the "sufficient immediacy" requirement that merits a declaratory judgment.

Id.  Plaintiff's dispute with Defendants is not projected; Defendants' notifying Plaintiff that he

needed to relocate, Plaintiff's incursion of brokerage and construction estimate fees, and the

City's reversal of its relocation decision have already occurred.  Am. Compl. ¶¶ 35–36, Exs. A,

F.  Plaintiff's claims are ripe for actual adjudication, not federal declaratory judgment.

To receive a declaratory judgment under Virginia law, Plaintiff must demonstrate that he

anticipates suffering a wrong if the Court does not enumerate the Parties' rights and obligations.

Liberty Mut., 211 Va. at 421.  Again, Plaintiff alleges that the City has already improperly

denied him relocation assistance.  Am. Compl. at 1.  The purpose of the Virginia declaratory

judgment action is to "avoid litigation" rather than "aid" it as an addition to a complaint, Liberty

Mut., 211 Va. at 421, but Plaintiff has attempted the latter.  Neither federal nor state declaratory

judgment is proper here.

### iv.   Conclusion

The Court **GRANTS** Defendants' Motion as to Count 5.

## G.   Count 6: "Deprivation of Rights Guaranteed Under State Law"

### i.   Supplemental State Law

A federal court may exercise supplemental jurisdiction over state law claims when the court has original jurisdiction over federal claims which form part of the same case or controversy as the state law claims. 28 U.S.C. § 1367(a) (2012). If all of the claims under a court's original jurisdiction are dismissed, the supplemental claims must also be dismissed. § 1367(c)(3).

*ii.   Analysis*

Plaintiff has sufficiently alleged procedural due process claims, see supra Part II.C., which are properly before the Court under its federal jurisdiction, § 1331. His supplemental state law claims arise from the same facts as his federal due process claims and are therefore properly before the Court under its supplemental jurisdiction. § 1367(a).

*iii.   Conclusion*

The Court **DENIES** Defendants' Motion as to Count 6.

**H.   Conclusion**

When viewed in the light most favorable to him, Edwards, 178 F.3d at 244, a portion of Plaintiff's allegations are sufficient to state a claim for which relief can be granted, Fed. R. Civ. P. 12(b)(6). For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss as to Counts 1, 3, 4, and 5 and **DENIES** the Motion to Dismiss as to Counts 2 and 6. However, the Court **GRANTS** Plaintiff leave to amend Count 4. If Plaintiff is unable to allege a cause of action under Count 4, no further amendments will be allowed.

**III.   PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

**A.   Legal Standards**

A party may amend its pleading once as a matter of course before a responsive pleading is filed. Fed. R. Civ. P. 15(a)(1). Afterward, a party may amend its pleading with the opposing

party's written consent or the court's leave, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted if no "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . ." are present. Foman v. Davis, 371 U.S. 178, 182 (1962). Federal courts strive to resolve matters on their merits rather than on technicalities. Sciolino v. City of Newport News, Va., 480 F. 3d 642, 651 (4th Cir. 2007).

### *i.   Bad Faith*

The more advanced a matter, the more likely an amendment prejudices the defendant and suggests the plaintiff is acting in bad faith. Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006). Strategically delaying the assertion of a claim or defense does not indicate bad faith unless it is accompanied by prejudice to the other party. See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981) (holding that the plaintiffs' proceeding on a late second case theory was not in bad faith because they were not required to proceed on both theories at the outset of the case).

### *ii.   Delay or Dilatory Motive*

A party should move to amend its pleading as soon as the necessity for amendment becomes clear, Deasy v. Hill, 833 F.2d 38, 41 (4th Cir. 1987), but delay without any "specifically resulting prejudice" or obvious "design by dilatoriness to harass the opponent" is insufficient for a denial of the motion, Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980). Motions to amend pleadings can even be made at trial if the opposing party is not prejudiced. See Sweetheart Plastics, Inc. v. Detroit Forming, Inc., 743 F.2d 1039, 1044 (4th Cir. 1984). The opposing party must, however, have a fair opportunity to conduct necessary

discovery on any issues introduced by the amendment. Deasy, 833 F.2d at 41.

### iii.   *Futility*

A plaintiff may not amend a complaint to include a futile new claim. Laber, 438 F.3d at

426. A claim is futile if the amendment's language is "clearly insufficient or frivolous on its

face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986). If the claim does not

on its face signal the inapplicability of the statute and a factual inquiry must be made, then the

claim is not futile. Id.

### iv.   *Prejudice*

"Absence of prejudice, though not alone determinative, will normally warrant granting

leave to amend." Davis, 615 F.2d at 613. However, if the defendant will be prejudiced, the

plaintiff's amendment will usually be prohibited. See, e.g., Red Bird Egg Farms, Inc. v. Pa.

Mfrs. Indem. Co., 15 Fed. App'x 149, 154 (4th Cir. 2001) (holding that the plaintiff's

amendment including a new case theory three days before trial "would have disrupted the trial

schedule and unduly prejudiced [the defendant]"); Johnson, 785 F.2d at 509–10 (stating that

delay and prejudice to the opposing party, not delay alone, are sufficient to bar amendment). But

c.f. Sweetheart Plastics, 743 F.2d at 1044 (holding that an amendment was permissible at trial

because defendant was not prejudiced). In Laber v. Harvey, the Fourth Circuit stated,

> A common example of a prejudicial amendment is one that raises a new legal
> theory that would require the gathering and analysis of facts not already
> considered by the defendant, and is offered shortly before or during trial. An
> amendment is not prejudicial, by contrast, if it merely adds an additional theory of
> recovery to the facts already pled and is offered before any discovery has
> occurred.

438 F.3d at 427.

### v.   *Administrative Procedures Act ("APA")*

"Agency action made reviewable by statute and final agency action for which there is no

other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (2012).  This

Court held in Clear Sky Car Wash, LLC v. City of Chesapeake, Virginia that the URA creates no

private right of review under § 4625.  910 F. Supp. 2d 861, 878–79 (E.D. Va. 2012); 42 U.S.C.

§ 4601 et seq. (2012).  A court thus can review only a final agency action under § 4625.  5

U.S.C. § 704; see Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990); Clear Sky, 910 F.

Supp. 2d at 878–79. An "agency action" is "the whole or a part of an agency rule, order, license,

sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  An

agency action is final when it: (1) "mark[s] the 'consummation' of the agency's decisionmaking

process" such that it is not tentative or interlocutory; and (2) has determined a party's "rights or

obligations" or results in "legal consequences." Bennett v. Spear, 520 U.S. 154, 177–78 (1997).

In a plaintiff bringing a claim under the APA must first "exhaust[ ] . . . all intra-agency

appeals mandated either by statute or by agency rule."  Volvo GM Heavy Truck Corp. v. U.S.

Dept. of Labor, 118 F.3d 205, 209 (4th Cir. 1997) (quoting Darby v. Cisneros, 509 U.S. 137, 147

(1993)).  Then, in pleading his claim, a plaintiff must identify the agency action that affects him

in the specified fashion and "show that he has 'suffered legal wrong' because of the challenged

agency action, or is 'adversely affected or aggrieved by the action within the meaning of a

relevant statute.'" Lujan, 497 U.S. at 882–83 (quoting 5 U.S.C. § 702).

In Beaird-Poulan Division of Emerson Electric Company v. Department of Highways,

State of Louisiana, the district court held that a state denial of relocation benefits was a final

agency action subject to judicial review even though the agency had "rebuffed plaintiff's request

for relocation assistance" and "ha[d] not held an adversary hearing," despite the Court's order to

do so.  441 F. Supp. 866, 868 (W.D. La. 1977), aff'd sub nom. Beaird-Poulan, Inc. v. Dep't of

Highways, State of Louisiana, 616 F.2d 255 (5th Cir. 1980).  The administrative decision was

considered final because "[a]ll steps for reconsideration ha[d] been taken." Id.

## B.    Parties' Arguments

### i.    Plaintiff

Recalling the April 7, 2016 hearing on the Motion to Dismiss, Plaintiff claims that "Defendants argued to the Court that [Plaintiff's] only vehicle to enforce [his] rights under the URA is a claim pursuant to the Administrative Procedure Act . . . ." Doc. 23 at 2.  Plaintiff "do[es] not agree that [his] only remedy is under the APA," but claims that "justice requires" the granting of leave to amend to add an APA claim. Id.

In response to Defendants' arguments, Plaintiff states that Defendants "invit[ed]" Plaintiff to make a claim under the APA. Defendants' attorney said at the April 7, 2016 hearing, "But it's under the APA, and that is enunciated in Clear Sky that that is the vehicle that is available for a judicial review of that decision." Doc. 26 at 2 n.1 (quoting Hearing Tr. 34:4, April 7, 2016).  Plaintiff argues, "[t]he Defendants cannot represent to the Court that Dr. Bergano was afforded an appeal with regard to whether he is a displaced person and now seek to bar his claim under the APA on the grounds that he failed to make that appeal." Doc. 26 at 2.

Plaintiff also responds that the City's September 23, 2015 letter was a final agency action because it "stated that [the City] had reviewed the information provided and 'ultimately concluded' that Dr. Bergano could remain in the property and notified him of this determination." Doc. 26 at 2 (quoting Am. Compl., Ex. H).  Plaintiff claims he also did not need to appeal that final action because the City "notified him of its final determination" thirty-four (34) days after notifying him that he did not need to relocate and "before the 90 day period had elapsed." Doc. 26 at 2–3.

### ii.    Defendants

30

Defendants argue that Plaintiff's amendment is futile because it is untimely, no final agency action has occurred, and Plaintiff knows it is baseless. Doc. 25 at 2–5.

First, Defendants assert that Plaintiff's "attempt to assert a claim under the APA is untimely." Doc. 25 at 2, 4. Because Plaintiff's amendment is based on the City's August 20, 2015 letter denying Plaintiff relocation benefits, Defendants allege that Plaintiff should have appealed it within the City's ninety (90) day appeal window, or by November 20, 2015. Doc. 25 at 3. Defendants note that the City's appeal period is longer than the sixty (60) day window required under federal regulations. Id.; see 49 C.F.R. § 24.10. Defendants argue that because Plaintiff first pled an APA claim on December 1, 2015, outside the City's appeal window, any APA claim is time-barred. Id. They claim that "no facts . . . or any inferences to be drawn from [the pleadings] indicate Dr. Bergano ever desired to appeal the City's August 20, 2015 decision regarding his status as a displaced person, other than the fact that he immediately filed suit in federal court." Id. Furthermore, Defendants argue, Plaintiff cannot construe his August 12, 2015 letter to the City declaring an "intent to appeal"[12] as an appeal of the City's decision because the City's August 20, 2015 letter denying Plaintiff benefits had not yet been sent. Am. Compl., Ex. A; Doc. 25 at 3.

Flowing from their first argument, Defendants claim that Plaintiff's amendment is futile because no final agency action has occurred. Doc. 25 at 2. "Because Dr. Bergano never appealed the August 20, 2015 decision regarding his relocation eligibility status, the City was never afforded the opportunity to issue final agency action on his claim of being a displaced person under the URA." Id. at 3. Defendants characterize the City's August 20, 2015 letter

---

[12] Plaintiff attached this letter to his Amended Complaint, Am. Compl., Ex. D, and proposed Amended Complaint, Doc. 23, Ex. A. The letter states, "[T]he firm will be appealing the City's decision regarding the build out costs of the Berganos' new office and relocation costs. By copy of this letter to Robin Brandeburg we give notice of our intent to appeal and would ask for your cooperation in expediting the process." Am. Compl., Ex. D.

denying Plaintiff relocation benefits as "in and of itself . . . not a final agency action under the facts in the record before the court." Id.

Third, Defendants argue that Plaintiff knows his amendment is futile as signaled by his "strategically select[ing] what causes of action to pursue in the original Complaint and First Amended Complaint." Id. at 4. They claim Plaintiff "was aware of the APA and the need to make such a claim from the initiation of the lawsuit," and he did in fact include an APA claim in his original Complaint. Id. After Defendants filed their first Motion to Dismiss, Doc. 5, however, Plaintiff filed his Amended Complaint without the APA claim, Am. Compl., and did not mention any APA relief in his opposition to Defendant's Motion to Dismiss, see Doc. 15. Defendants thus argue,

> [t]he fact that all references to the APA or 5 U.S.C. § 704 were thereafter purposely removed and not included among the claims in the first Amended Complaint, despite Dr. Bergano's having been put on notice by the Defendants of the necessity to make such a claim, demonstrates that Plaintiff was well aware that he had no basis to make such a claim . . . .

Doc. 25 at 4.

## C.     Analysis

### i.     Introduction

The City made three (3) decisions in Plaintiff's case: (1) Plaintiff was entitled to no relocation assistance for the alternate dental office, Am. Compl. Ex. C, at 1; (2) Plaintiff did not need to relocate, id., Ex. F; and (3) Plaintiff was not displaced and was entitled to no relocation assistance, id., Ex. H, at 2. Plaintiff's ability to receive judicial review in this Court under the APA depends on whether a "final agency action" occurred "for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

The City's first decision that Plaintiff was entitled to no relocation assistance for the alternate dental office was nullified by the City's second decision that Plaintiff did not need to

relocate. Because the City's second decision did not affect any legal "rights or obligations," it was not a final agency action. See Bennett, 520 U.S. at 177–78. The City's third decision that Plaintiff was not displaced produced the simultaneous "legal consequence" that he was entitled to no relocation assistance. See Am. Compl., Ex. H, at 2; Bennett 520 U.S. at 177–78; 42 U.S.C. §§ 4601(6)(A)–(B), 4622. The City's third decision, therefore, is the proper subject of a "final agency action" analysis.

A denial of relocation benefits can be subject to judicial review if it is final. Beaird-Poulan, 441 F. Supp. at 868. The City's relocation assistance brochure states,

> If any person feels the City has failed to properly determine their eligibility for relocation assistance, the aggrieved person may file a written interim appeal within 90 days. You will be given a prompt and full opportunity to be heard. You have the right to be represented by legal counsel or other representative at your expense. The City will promptly review your appeal, consider all pertinent information and then provide you with a written determination explaining the decision. If you are still dissatisfied, a final appeal to the Commonwealth Transportation Commissioner may be submitted within 10 days. If the full relief you requested is not granted, you have the right to seek judicial review, which must be filed with the courts within thirty (30) days after receipt of the final appeal determination.

Am. Compl., Ex. G, at 7. In the City's relocation appeal process, a final decision follows a preliminary decision, an opportunity for the aggrieved party to be heard, the City's review and secondary decision, and an appeal to the Transportation Commissioner. Id. Only after these steps are completed may the aggrieved party submit its petition for judicial review under the APA. See 5 U.S.C. § 704.

### i.  Bad Faith, Delay, and Prejudice

Defendants allege no bad faith or purposeful delay in Plaintiff's seeking to amend his complaint. See Doc. 25. Nor do Defendants allege a prejudicial result if Plaintiff amends his complaint. See id. This suit was filed only seven (7) months ago, and Defendants clearly had notice of the potentiality of an APA claim signaled by their suggesting this claim at the April 7,

2016 hearing. See Doc. 26 at 2 (citing Hearing Tr. 34:4, April 16, 2016). There appears to be no prejudice to Defendants, who acknowledge the substance of a potential APA claim and have already prepared some argument on the issue. See id.

*ii.   Futility*

Plaintiff's argument that he did not need to appeal because Defendants gave him a final decision on September 23, 2015 is nonsensical. See Doc. 26 at 2. Plaintiff characterizes the City's September 23, 2015 letter labeling him "not displaced" as a "final" agency action as though it resulted from an appeal process, but the letter contained the very decision which Plaintiff would have had to appeal. Am. Compl., Ex. H, at 2.

The City's relocation brochure requires an appellant to "file a written interim appeal" within ninety (90) days of the City's notice of decision. Id., Ex. G, at 7. Plaintiff did not file a written appeal from any of the City's decisions.[13] Plaintiff could have appealed his displacement status and received a second decision from the City followed by a decision from the Transportation Commissioner. Id. Those steps would have initiated the "consummation of the [City's] decisionmaking process." Bennett, 520 U.S. at 177–78. Instead of appealing, as Defendants point out, Plaintiff filed the instant lawsuit. Doc. 25 at 3.

Therefore, because Plaintiff did not appeal the City's decision characterizing him as "not displaced," "all steps for reconsideration" have not been taken, and a final agency action has not occurred. See Beaird-Poulan, 441 F. Supp. at 868. Because the City's actions thus far are not "final" for purposes of the APA, Plaintiff's amendment is futile. See 5 U.S.C. § 704.

**D.   Conclusion**

---

[13] Plaintiff's counsel did send the City a letter on August 12, 2015 in response to the City's August 5 notification that it would not provide relocation assistance for Plaintiff's selected alternate office space. Am. Compl., Exs. D, at 1, C, at 1. Plaintiff's counsel stated, "[T]he firm will be appealing the City's decision regarding the build out costs . . . ." Id., Ex. D, at 1. Plaintiff's counsel's use of the future tense indicated that the letter was not Plaintiff's actual appeal, nor could it have been under the analysis above. Id.

34

Insofar as the Motion for Leave to Amend Complaint seeks to add a claim under the APA, the Court **DENIES** the Motion.  Doc. 22.  However, the Court **GRANTS** Plaintiff leave to amend Count 4.  See supra Part II.H.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss as to Counts 1, 3, 4, and 5 and **DENIES** the Motion to Dismiss as to Counts 2 and 6.  Doc. 12.  The Court **GRANTS** Plaintiff leave to amend the Complaint as to Count 4 but otherwise **DENIES** Plaintiff's Motion for Leave to Amend Complaint, Doc. 22.

The Clerk is **REQUESTED** to deliver electronically a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

/s/

Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA

Aug 15, 2016

35